# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 96-21003
(Summary Calendar)

AWI, INC.; ET AL,

Plaintiffs,

AWI, INC.,

Plaintiff-Appellee,

versus

ROBERT D. DIXON,

Claimant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas
(H-89-CV-1400)

November 19, 1997

Before JONES, SMITH and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff AWI, Inc. ("AWI") brought this suit against Robert D. Dixon ("Dixon") pursuant

to 46 U.S.C. §181, *et seq.* in response to a claim filed by Dixon in state court seeking damages under

the Jones Act, 46 U.S.C. §688, and the general maritime law. Dixon requested recovery for personal

injury sustained in the course of working aboard "Sarge," an inland drilling vessel owned by AWI.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The district court rendered judgment in favor of AWI, ruling that despite the unseaworthy condition of the barge, Dixon's own actions were the sole proximate cause of his injury. Dixon appeals this ruling. We affirm.

## BACKGROUND

On March 29, 1987, while appellant Dixon was employed by AWI as a floorhand aboard the vessel Sarge, he experienced a seventeen-foot fall from his position atop the ship's blowout preventer to the rig floor below. As a result, Dixon sustained serious injuries. Though he had only recently commenced work with AWI, Dixon was an experienced oilfield worker who had been employed as a floorhand, or "roughneck,"[1] for many years. The circumstances of Dixon's fall were as follows: in the course of preparing for a workover operation in territorial waters of Louisiana, Dixon was assigned the task of connecting the hammer union from a flexible flow-line hose to the bell nipple on the ship's blowout preventer.[2] It was necessary for Dixon to stand on top of the blowout preventer in order to perform this task. AWI policy required that employees wear a safety belt for all duties performed more than ten feet above the rig floor. A proper safety belt is made of canvas with a wire liner. The canvas belt has a D-ring sewn into it, a buckle with two prongs, and a canvas belt loop to hold the end of the belt beyond the buckled part. The safety belt is used in conjunction with a

---

[1]Because they perform such labor-intensive and dangerous tasks on the rig, floorhands are perhaps better known as roughnecks in the drilling industry.

[2]Despite the highly technical language used to describe this process, it is apparently a routine aspect of the crewmembers' duties aboard oil drilling vessels. The gas blowout preventers are considered to be the last line of defense in the case of a drilling emergency. Thus they must be serviced and attended to prior to all drilling operations. The preparations in which Dixon was engaged at the time of his fall were to ensure that the flow-line hoses carrying hydraulic fluid were connected to the blowout preventers in case of a leak—known as "a well coming in"—during drilling. In such a situation, the blowout preventers must be closed immediately to prevent a possible gas blowout caused by the leak into the rig or the ship.

2

lanyard—a length of plastic-coated reinforced steel cable with spring-loaded clamps on either end. When properly used, the lanyard is wrapped around a pipe, pole, or other stable equipment in the employee's workspace, and the lanyard is clamped to the D-ring on the belt. Because of the height of the machinery on which Dixon was working, he was required to use a safety belt. Though Dixon first approached the blowout preventer without a safety belt, his supervisor instructed him to put one on before performing the job. Dixon obtained and used a belt that was not equipped with a steel D-ring, but that was on board the barge at the time.[3] Dixon claims to have wrapped the lanyard twice around the bell nipple, then looped the lanyard around the belt and attached the clamp to the lanyard itself.[4] As the district court noted, however, "[h]ad Dixon affixed the safety belt as he described, he would not have fallen to the rig floor." Thus, the evidence before the district court led it to reach a different conclusion than what Dixon asserted regarding the use of the safety belt. The court found that Dixon had, in fact, used the belt in a precarious fashion. The evidence showed that he hooked the lanyard clamps to his canvas belt loop—an action that in his deposition, Dixon conceded would have been unsafe had he done it. Dixon fell to the keyway deck seventeen feet below and sustained serious injuries as a result.

Following the accident, Dixon filed a claim in state court for damages sustained in connection

---

[3]The parties dispute how the safety belt got on board the vessel. While AWI maintains that it was not responsible for placing the belt on board, Dixon similarly denies responsibility for bringing the belt onto the vessel. The district court concluded that there was no negligence on the part of AWI in connection with the belt being on board the vessel.

[4]This litigation presented complicated fact issues for the district court, particularly with regard to the manner in which the safety lanyard was affixed to the safety belt. Further confusion was caused by the inconsistencies between Dixon's deposition testimony and the testimony of both Dixon's own and AWI's witnesses. Dixon's failure to appear at trial and offer live testimony further frustrated the possibility of clarifying these inconsistencies.

with his fall.  AWI responded by initiating this proceeding in district court, seeking either full exoneration from or limitation of liability for the injuries sustained by Dixon.  Following a bench trial, the district court ruled in AWI's favor and fully exonerated it from all liability for Dixon's injuries. The court entered findings of facts and conclusions of law which indicated that there was at least one safety belt properly equipped with a D-ring aboard the vessel Sarge available to Dixon at the time he chose to wear the defective one.  It further found that the evidence supported AWI's assertion that Dixon had attached the safety lanyard to his canvas belt loop prior to his fall.  Based on the presence of the belt on the vessel at the time of the accident, the district court concluded that the safety belt aboard the Sarge rendered the vessel unseaworthy.  The court further determined, however, that "the unseaworthiness was not the cause of the accident or Dixon's injury."  The court went on to note that Dixon unreasonably chose to wear the unsuitable belt when a suitable safety belt was available. Acting "in the interest of judicial economy," the district court determined that AWI had no privity or knowledge of any negligent or unseaworthy conditions aboard the vessel.  It also determined that had AWI not been exonerated from liability, the amount of the limitation fund would be established at $175,000 (the fair market value of Sarge at the time of Dixon's accident) plus 6 percent annual interest in accordance with Rule F of the Admiralty & Supplemental Rules of the Federal Rules of Civil Procedure.  Dixon timely appeals the order of the district court dated September 30, 1996, and this court has appellate jurisdiction pursuant to 28 U.S.C. §1291 and Federal Rule of Appellate Procedure Rule 4(a).

## DISCUSSION

On appeal, Dixon urges this court to reverse the final judgment entered by the district court so that he may proceed with his claim in state court. Dixon bases his argument for reversal upon claims of error relating to the district court's findings that (1) Dixon's own negligence was the sole proximate cause of his injury, (2) AWI should be exonerated from liability despite the finding that the presence of the defective safety belt onboard the vessel rendered it unseaworthy, (3) AWI had no privity or knowledge of the unseaworthy condition of the vessel, and (4) the value of the vessel should be based on fair market value for limitation fund purposes. Because we affirm the holding of the district court, we need here address only the first two of these issues. We begin by examining the lower court's disposition regarding causation. This court has noted that "[i]n a bench tried case, a trial court's findings respecting negligence, cause, and proximate cause are findings of fact reviewed under the clearly erroneous standard." Gavagan v. United States, 955 F.2d 1016, 1019 (5th Cir. 1992). We also have noted that ". . . the appellant has the burden of establishing that the district court's finding was clearly erroneous. . . ." Noritake Co., Inc. v. M/V Hellenic Champion, 627 F. 2d 724, 727-28 (5th Cir. 1980). The Supreme Court further explains that a finding of fact is clearly erroneous only when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." McAllister V. United States, 348 U.S. 19, 20 (1954) (internal quotation omitted). In the instant case, we hold that Dixon has not established that the district court's findings are clearly erroneous.

Both parties agree, and the evidence clearly indicates, that the safety belt without the D-ring was a substantial factor in bringing about Dixon's injury. The dispute, then, centers around whether Dixon or AWI should bear the responsibility for Dixon's use of that particular belt. We find that the

5

evidence in the record supports the trial court's finding of negligence on Dixon's behalf. Despite Dixon's claims to the contrary, all witnesses who testified as to the matter at trial—including Dixon's own expert witness on safety—concluded that Dixon had attached the safety lanyard to the cloth belt loop.[5] By Dixon's own admission, hooking the lanyard into the belt loop in such a manner would be unsafe.[6] Though Dixon denies having affixed the safety belt to his belt loop in this manner, the district court found that there was "overwhelming credible evidence to the contrary[.]" After reviewing the record as a whole, we too conclude that there is substantial evidence of Dixon's negligence.

Dixon further argues that even if his actions are found to have contributed to his injury, his negligence cannot preclude recovery because his claim is based on unseaworthiness. Arguing that the unseaworthy condition of the safety belt was the proximate cause of his accident, Dixon contends that the district court's finding of unseaworthiness should preclude AWI from exoneration of its liability. Citing the general premise of Dickens v. U.S., 815 F. Supp. 913 (E.D.Va. 1993), appellant suggests that AWI can be properly exonerated from liability only if Dixon himself created the unseaworthy condition or was injured as a result of his negligent use of an otherwise seaworthy vessel. Dixon clearly misses the district court's point with regard to this claim. As applied to the facts of the instant case, the holding in Dickens is inapposite. Here, the district court determined that the vessel's unseaworthiness was *not* the cause of Dixon's accident. In addition, Dixon has failed to

---

[5]Indeed, Captain Stacy Payne, Dixon's expert witness on safety, admitted that he could think of "no other explanation" for Dixon's fall to the rig floor.

[6]Dixon claims that he affixed the broken safety belt in a manner that would not have caused the fall. At trial, however, it was demonstrated that if Dixon had tied the belt in this fashion, there would not have been enough wire remaining to loop through the belt in the manner Dixon described.

6

meet his burden of refuting the relevant evidence before the district court. This court has articulated that "[t]here is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim. . . .To establish the requisite proximate cause in an unseaworthiness claim, a [movant] must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir. 1988) (internal citations omitted). Assuming arguendo that the mere presence of the faulty safety belt on the vessel rendered the vessel unseaworthy, Dixon nonetheless has failed to prove that the unseaworthy nature of Sarge played a substantial part in bringing about his injury. The district court determined that:

> the unseaworthiness was not the cause of the accident or Dixon's injuries. Dixon unreasonably chose to wear the unsuitable belt when a suitable safety belt was available. Furthermore, he attached the lanyard to the belt loop in a way that he could not reasonably have expected to hold him in the event of a fall. Dixon's negligence in wearing a belt that was clearly unsuitable for use as a safety belt and in attaching the lanyard in a way he knew to be unsafe was the sole proximate cause of his injuries.

Because the district court's factual findings are not clearly erroneous, we must uphold its decision to exonerate AWI from liability.

Dixon's remaining challenges relate to the district court's finding that AWI had no privity or knowledge of the unseaworthy condition of the vessel Sarge and its failure to consider the testimony of his expert in determining the appropriate valuation and measure of damages for the limitation fund. Because we find that the evidence supports the trial court's decision to exonerate AWI from liability, we do not reach these issues.

7

**CONCLUSION**

Here, the district court found from the evidence that Dixon's own negligence was the proximate cause of his injury despite the unseaworthiness of the vessel Sarge. This finding constitutes a proper basis for the district court's denial of recovery under the general maritime law. The district court was not persuaded by the evidence that any factor other than Dixon's own negligence was the proximate cause of his accident and subsequent injury. This finding is not clearly erroneous. Accordingly, the district court's judgment is AFFIRMED.